THE CITY OF CHICAGO, Plaintiff, v. JOHN A. DICKEY *et al.,* Defendants (Cosmopolitan National Bank of Chicago, as Trustee of the marital trust under the will of Nathan Weitzman, Deceased, Defendant and Counterplaintiff-Appellant; John A. Dickey *et al.,* Defendants and Counterdefendants-Appellees).

First District (2nd Division) No. 85—2610

Opinion filed August 12, 1986.

Reif & Rosenbaum, of Chicago (Mark R. Rosenbaum, of counsel), for appellant.

Benjamin C. Duster, of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

The instant case addresses the propriety of the circuit court's decision to grant John and Dorothy Dickey, appellees, summary judgment on the question of whether they were personally liable on a note they signed as co-makers, which note was secured by a trust deed encumbering certain parcels of real estate. The note was held by appellant, Cosmopolitan National Bank of Chicago.

The properties which are the subject of the instant case are 905-13 East 61st Street and 6101-03 South Drexel, both of Chicago (hereinafter referred to as the properties), and both of which were initially owned by Nathan Weitzman, as the sole beneficiary of a land trust executed on January 11, 1974. Exchange National Bank of Chicago was the land trustee holding title to the properties; Exchange was succeeded in that capacity during the course of this litigation by La Salle National Bank.

On January 14, 1977, appellees entered into a contract with Weitzman, whereby they would purchase the properties from him for $80,000, with the sale to close on April 25, 1977. In the interval between the execution of the contract and the closing, Weitzman passed away. The closing proceeded, however, with Weitzman's estate transferring the properties and taking back a note for $55,000, which note, as has been already indicated, was secured by a trust deed on the properties. Exchange National Bank was the maker of that note, and appellees were denominated "co-makers" of the note. Weitzman's estate was later closed, and the note secured by the trust deed was distributed to Cosmopolitan, appellant herein, as marital trustee under Weitzman's will.

Appellees signed both the note and the trust deed as co-makers, that term having been inserted on the printed form in place of the term "guarantor." Both documents contained the following clause, also typewritten onto the printed form:

"The undersigned, as co-makers hereof, hereby agree to be bound by the terms and conditions herein set forth."

Elsewhere on the form, Exchange National Bank, as maker of the

note, had explicitly limited its liability under the note as follows:

"[N]othing herein or in said note contained shall be construed as creating any liability on [Exchange] personally to pay the said note or any interest that may accrue thereon, or any indebtedness accruing hereunder, *** the owner or owners of any indebtedness accruing hereunder shall look solely to the premises hereby conveyed for the payment thereof ***."

The city of Chicago precipitated the instant proceedings when, on January 22, 1980, it filed a complaint alleging municipal code violations against the properties. Named as defendants in that action were, *inter alia,* appellees and Weitzman's estate. Appellant moved to dismiss Weitzman's estate and to substitute for it as marital trustee under the will, which motion was granted.

Appellant eventually filed a third-party complaint for foreclosure of the trust deed and for a finding of appellees' personal liability for any deficiency arising from the foreclosure. Appellees, in their answer, specifically denied the assumption of any personal liability on the note. Rather, appellees noted that Exchange National Bank, the land trustee and maker of the note, had clearly limited the extent of its liability to payments out of the properties only; as co-makers along with Exchange, appellees asserted a parallel limitation on their own liability.

Both parties filed what were, in substance though not technically in form, motions for summary judgment. After hearing arguments on April 8, 1985, the circuit court granted appellees' request for a finding that they were not personally liable on the note. In all other respects, the court granted appellant's motion for summary judgment. In reaching this decision, the court relied on the allegation that appellant drafted the instruments at issue and that any ambiguity would have to be resolved against them. The court found that the instruments were ambiguous as to personal liability, and ruled accordingly.

On August 2, 1985, the circuit court reaffirmed its decision when it denied appellant's motion for rehearing of its earlier ruling. Appellant thereafter perfected this appeal, challenging the propriety of the court's finding that appellees were not personally liable.

Three issues are raised on appeal, specifically: whether there were still genuine issues of material fact extant when the circuit court granted appellees summary judgment, such as to preclude the award of that remedy; if there were no such issues present, whether the circuit court erred in ruling in favor of appellees rather than appellant on the issue of personal liability; and finally, whether the court abused its discretion when it denied appellant's request for rehearing of the issue. All three questions are closely interwoven as all turn on the predomi-

nant issue: What did the contracting parties intend when they made appellees "co-makers" of the note? It is appellant's contention that the parties clearly manifested their intent to make the appellees personally liable for any deficiency arising on the note and trust deed. As indicated, appellees posit that as co-makers, their liability was co-extensive with that of the maker, Exchange; that is to say, appellees claim that their liability extends no further than the value of properties themselves.

The narrow question posed by this case is whether there were still issues of material fact unresolved when the court truncated the cause by granting summary judgment. We conclude that there were such questions present at that juncture, and remand the cause for further proceedings.

 Resolution of the case requires an appreciation of both the office of summary judgment and of basic precepts of contract construction. The remedy of summary judgment has been labelled "drastic" in nature (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29), and hence courts are admonished to employ it with due caution (*Ruby v. Wayman* (1960), 99 Ill. App. 2d 146, 149-50, 240 N.E.2d 699). The function of this procedure is not to try cases, but to isolate those cases which do not present triable factual issues but only legal questions. (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271; *Bultman v. Bishop* (1983), 120 Ill. App. 3d 138, 457 N.E.2d 994.) In such cases, there is no need to present evidence to a trier of fact; rather, the court as trier of law may summarily dispose of the legal questions involved. However, so as not to deprive the non-moving party of any rights incident to trial, the court is required to construe all evidence strictly against the movant and liberally in favor of the opponent. (*Shockley v. Ryder Truck Rental* (1979), 74 Ill. App. 3d 89, 93-94, 392 N.E.2d 675.) It is only when the movant demonstrates that his entitlement to judgment as a matter of law is free from doubt that a case should be so decided. *Elliot v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640.

 In the instant case, we are constrained to find that the circuit court erred in granting appellees summary judgment on the question of their personal liability, thereby depriving appellant of an evidentiary hearing to which it was entitled.

At the summary judgment hearing, the following colloquy took place:

> "THE COURT: What's the co-maker [the Dickeys] liable for?
> [APPELLANT'S TRIAL COUNSEL]: He is liable personally to the extent he is the, personally liable for monies that are due

in—

> THE COURT: Most respectfully, counsel; you people drew the instrument. If you intended to hold them personally liable you have got to show that they—spell it out explicitly that they will be personally liable. It's ambiguous. I'm going to construe it against you.
>
> I'm going to rule that you cannot get a deficiency against the Dickeys based upon the way the note is written."

In essence, the circuit court acknowledged that it could not divine the contracting parties' intent from reference to the terms of the instrument itself. The court then turned to the common law doctrine of *contra proferentem* in an effort to resolve the intent dispute (see *Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 798, 405 N.E.2d 1051), and thereby elected to construe the latent ambiguity against appellant as the party purportedly responsible for introducing the ambiguity. This analysis was premature from the standpoint of contract construction and antithetical to the office of summary judgment.

While the construction to be given the terms of a contract presents a question of law in the first instance (*Wil-Sh(re Motor Sales, Inc. v. Continental Illinois Bank* (1984), 130 Ill. App. 3d 167, 171, 474 N.E.2d 376), where the terms of the contract are ambiguous factual questions are presented (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 208, 456 N.E.2d 206).

> "When an agreement contains material terms capable of being understood in more than one sense and pleadings and affidavits conflict as to their meaning or are insufficient as bases upon which to determine their meaning as a matter of law, the circuit court must resort to an evidentiary hearing, rather than summary judgment proceedings, so that the parties may present their respective positions at trial as to the true intent and agreement they have executed." (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 424, 466 N.E.2d 1271.)

Here, the circuit court explicitly found that the instrument was ambiguous on the question of the parties' intent. This finding necessitated resort, not to the doctrine of *contra proferentem* or the summary-judgment mechanism, but to an evidentiary hearing on the parties' intent.

The reluctance of courts to rely upon the doctrine as a first resort is simply a recognition of the nature of the doctrine and its limitations. While the doctrine invariably produces a result binding as between the parties, that result is not premised upon any affirmative proof of the parties' understanding when they consummated the agreement. Rather, the result hinges on the presumption, made in the absence of

proof, that had the drafter intended a particular construction, he would have incorporated it in the agreement, and his failure to do so should not inure to his benefit. Clearly, this conjecture is inferior to an unambiguous assertion of the parties' understanding in the instrument itself, to extrinsic proof of the parties' agreement, or to other authority revealing that understanding.

> "[*Contra proferentem*] is 'at best *** a secondary rule of interpretation, a "last resort" which may be invoked after all of the ordinary interpretive guides have been exhausted.' [Citations.] In the instant case, we believe our efforts to ascertain the intent of the parties by means of extrinsic evidence has yielded a convincing result and, accordingly, [we] have no need to utilize this 'last resort' rule of construction." *Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 798-99, 405 N.E.2d 1051. Accord, *National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209, 456 N.E.2d 206.

As a matter of contract construction, the court erred in applying the doctrine without first permitting the parties an opportunity to present extrinsic evidence bearing on the ambiguity latent in the instrument.

Moreover, the court's finding of ambiguity was tantamount to an admission that a genuine issue of material fact was present. There could be no fact more material to an assessment of appellees' personal liability than the intent of the contracting parties as to that matter. In light of a finding of ambiguity, summary judgment was *per se* inappropriate, particularly in light of the court's failure to accord the parties an evidentiary hearing on the matter.

■ Finally, we note that a summary judgment motion requires that the court construe all evidence strictly against the moving party. Here, the Dickeys were employing that mechanism to terminate their personal liability under the note. The court, rather than construing the note against the Dickeys as movants, elected to construe the note against appellant, the motion's opponent. This decision was manifestly incorrect.

Accordingly, the circuit court's decision to grant appellees summary judgment on the issue of their personal liability is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.