**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC.; ACandS, Inc.; Aetna Casualty & Surety Company; and Travelers Indemnity Company, Defendants.**

No. 86 C 6119.

United States District Court, N.D. Illinois, E.D.

Oct. 30, 1991.

Marsha K. Ross, Haskell & Perrin, Chicago, Ill., for Continental Cas. Co.

Joan M. Hall, Jenner & Block, Suzanne S. Greene, Jones, Day, Reavis & Pogue, Chicago, Ill., William P. Skinner, Covington & Burling, Washington, D.C., for Armstrong World Industries Inc.

Stephen Novack, Patrick A. Fleming, Novack & Macey, Chicago, Ill., Frank H. Griffin, III, Gollatz, Griffin, Ewing & McCarthy, Philadelphia, Pa., for ACandS, Inc.

Robert E. Baranowski, M.C. Purmal & Associates, Chicago, Ill., for Employers Liability Assur. Co./Commercial Union and Great American Ins. Co.

Philip C. Stahl, Katherine E. Rakowsky, Grippo & Elden, Chicago, Ill., for Fireman's Fund Ins. Co.

James Thomas Ferrini, Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for INA Employers Ins. Co.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for American Home Assur. Co.

Warren S. Radler, Matthew W. Cockrell, Rivkin, Radler, Bayh, Hart and Kremer, Chicago, Ill., for Aetna Cas. & Sur. Co.

Alan H. Silberman, Katharine Bancroft Devoid, William T. Barker, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for Travelers Indem. Co.

James J. O'Hagan, Victor J. Piekarski, Brian Joseph Clarke, Querrey & Harrow, Ltd., Chicago, Ill., for Fidelity & Cas. Co.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant ACandS, Inc. ("ACandS"), for summary judgment on Count II of plaintiff's amended complaint.[1] For the following reasons, the motion is denied.

1. The motion for summary judgment and the briefs on the motion were filed prior to the plaintiff's filing of its amended complaint. Count II in the original and in the amended complaint are essentially the same. Based on ACandS's request and the absence of objection from Continental, the court will apply ACandS's

## FACTS

This declaratory judgment action involves a pair of umbrella excess liability insurance policies obtained by ACandS from plaintiff Continental Casualty Company ("CNA") and the applicability of those policies to the thousands of asbestos-related personal injury claims which have been brought against ACandS around the nation. Between 1958 and 1980, ACandS was covered by 24 primary liability policies and several excess policies, including the two CNA policies at issue.

CNA policy RDU9977990 covered both ACandS and ACandS's then-parent, Armstrong Cork Company (since renamed Armstrong World Industries), from January 1, 1966 to April 1, 1969. ACandS alone was covered by CNA policy RDU8042787 between April 1, 1969 and April 1, 1972. Each CNA policy had a $5 million limit, both per occurrence and in the aggregate, and an attached list of underlying primary policies, the coverage from which first had to be exhausted before the excess CNA coverage took effect. The CNA policies also had "Other Insurance" provisions (condition 11 on RDU9977990, condition 10 on RDU8042787). The RDU9977990 provision states that:

> If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be in excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy.

The RDU8042787 provision states that:

> If, with respect to loss and ultimate net loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects loss and ultimate net loss: provided that if the limit of liability of this policy is greater than the limit of liability provided by the other insurance, this poli-

cy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the limit of liability afforded by this policy.

> This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

The present lawsuit is part of a litigation series involving ACandS's asbestos liability coverage. ACandS first sued its two primary carriers, Aetna Casualty & Surety Company and Travelers Indemnity Company, in 1980 in Pennsylvania federal court. *See ACandS, Inc. v. Aetna Casualty and Sur. Co.*, 764 F.2d 968 (3d Cir.1985). CNA was not a party to the Pennsylvania case. Also in 1980, ACandS's former parent, Armstrong World Industries, sued all of its primary and excess carriers, including CNA, in California state court. That case was consolidated with several similar actions in 1982.

The consolidated California case involved at least two CNA policies: ACandS's excess RDU9977990 and a primary policy issued to Fibreboard Corporation. The CNA/Fibreboard policy apparently lacked an aggregate limit, creating the possibility that CNA could be forced to pay an indefinite amount under that policy while Fibreboard's excess insurers for the same policy period would be left unscathed. CNA sought to avoid that result by urging the California court to take an equitable approach: trigger the excess coverage when the underlying primary insurers for the same policy periods have paid the underlying amounts anticipated in the excess policies. In other words, if an excess policy was intended to cover losses over $1 million, the excess insurer should begin paying after the underlying primary insurer has paid $1 million, even if the primary insurer's liability is not fully exhausted. That, in a greatly simplified form, was CNA's argument, and it apparently achieved some

summary judgment motion to the amended    complaint.

success.[2] The California court, in a tentative decision, set forth a liability allocation plan that accepted CNA's argument in part. *In re Asbestos Ins. Coverage Cases,* Judicial Council Coordination Proceeding No. 1072 (Calif.Super.Ct., San Francisco, Aug. 29, 1988) (tentative decision concerning phase IV issues). At the time of briefing on the present motion, no final judgment had been entered in the California litigation.

CNA filed this case in the Circuit Court of Cook County, Illinois, and it was removed by the defendants to this court on August 18, 1986. Count II of the amended complaint seeks a judgment declaring that CNA's liability under excess policies RDU9977990 and RDU8042787 is not triggered until all of ACandS's available primary insurance is exhausted, not just the underlying primary policies listed on the CNA excess policies. ACandS's summary judgment motion on Count II seeks either a dismissal of that count or a declaration that only the listed underlying policies need be exhausted before the excess CNA coverage begins.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Nevertheless, in determining the existence of any genuine issues of material fact, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

ACandS makes three arguments for judgment on Count II in its favor: (1) judicial estoppel should bar the relief requested by CNA because it took an opposite position in the California litigation, (2) issue preclusion (collateral estoppel) should have the same effect because the issue was decided adversely to CNA in California, and (3) the insurance policies should be interpreted adversely to CNA's position either based on their plain meaning or, if deemed ambiguous, based on the rule that ambiguity is construed against the contract's drafter.

■ Regarding judicial estoppel, the court initially finds, as the parties apparently agree, that there is no conflict-of-law issue. The doctrine of judicial estoppel is essentially the same under federal case law and that of Illinois, where CNA is based, and Pennsylvania, where ACandS is based. Judicial estoppel, in all these jurisdictions, bars a party who successfully asserts a position in one case from adopting an inconsistent position in a later case. *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,* 910 F.2d 1540, 1547–48 (7th Cir.1990); *Cashmore v. Builders Square, Inc.,* 211 Ill.App.3d 13, 18, 155 Ill.Dec. 742, 745, 569 N.E.2d 1353, 1356 (2d Dist.1991); *Ballestrino v. Ballestrino,* 400 Pa.Super. 237, 583 A.2d 474, 478 (1990); *see also Harbor Ins. Co. v. Continental Bank*

---

**2.** Neither CNA's arguments nor the California court's ruling need be pinned down more precisely under this court's analysis of the judicial estoppel and claim preclusion issues.

*Corp.*, 922 F.2d 357, 364 (7th Cir.1990) (comparing judicial estoppel to its "cousin," the "mend the hold" doctrine). Although the scope of judicial estoppel may vary somewhat among these jurisdictions, a five-element Illinois test has general applicability: (1) the same party must have taken the inconsistent positions, (2) in judicial or quasi-judicial proceedings, (3) the records of each proceeding must clearly show that the party intended the facts underlying his position to be accepted as truthful, (4) the party must have succeeded, to his benefit, in pressing the position in the first proceeding, and (5) there must be total inconsistency between the two positions. *Department of Transp. v. Grawe*, 113 Ill.App.3d 336, 341–42, 69 Ill.Dec. 250, 254, 447 N.E.2d 467, 471 (4th Dist.1983).

■ An essential underpinning of judicial estoppel, a common set of facts upon which a party is taking inconsistent positions in different cases, is lacking here. The prior California litigation involved different insurance policies than are at issue in this case, with the exception of CNA policy RDU9977990. CNA, however, is not accused of taking inconsistent positions over RDU9977990. The California litigation, to the extent relevant here, addressed the impact of primary insurance policies without aggregate coverage limits. No such primary policies are at issue here. CNA's basic position with regard to excess policies—coverage only begins when all applicable primary insurance is exhausted—is the same in both California and here. CNA is essentially arguing in both cases that excess policies should be applied as written, unless unusual equitable factors exist that warrant another result. Therefore, no common core of operative facts between the California litigation and this case exists, and CNA's positions in each case are not clearly inconsistent.

The last three of the five elements listed in *Grawe* are lacking. The records of the respective cases do not show inconsistent factual positions by CNA. CNA's success in California is unclear because at the time of briefing before this court, there was no final judgment in the California litigation.

Moreover, CNA's legal positions in each case are not totally inconsistent. Judicial estoppel is not applicable to this case.

■ Moving along to issue preclusion, also called collateral estoppel, this doctrine requires the federal courts to accord a state's judgments the same preclusive effect as would the courts of that state. 28 U.S.C. § 1738; *South Bend Lathe, Inc. v. Amsted Indus., Inc.*, 925 F.2d 1043, 1046 n. 1 (7th Cir.1991). There are five requirements before collateral estoppel can be applied under California caselaw: (1) the issue decided previously must be identical to the issue for which preclusion is sought, (2) the issue must actually have been litigated in the first proceeding, (3) decision on the issue must have been necessary in the first proceeding, (4) the prior decision must have been final and on the merits, and (5) the party sought to be precluded from relitigating the issue must be the same, or in privity with, the party in the first proceeding. *Lucido v. Superior Ct.*, 51 Cal.3d 335, 341, 795 P.2d 1223, 1225, 272 Cal.Rptr. 767, 769 (1990), *cert. denied*, — U.S. —, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991). ACandS, the party asserting issue preclusion, has the burden of meeting these requirements. *Id.*

■ The first and fourth elements, at least, are lacking here. As discussed above, the issues in the California litigation and in this case are not identical. The August 1988 decision in that litigation, to which ACandS seeks to bind CNA in this case, is also clearly not final. The decision, labeled "tentative," was issued pursuant to a California rule which states in part that a "tentative decision shall not constitute a judgment and shall not be binding on the court." Cal.Rules of Court, Rule 232 (1988). The California courts would therefore not give any preclusive effect to the August 1988 decision, and it can have no preclusive effect in this court.   ·

■ Finally, the court can address ACandS's arguments regarding the meaning of the insurance policies. Neither ACandS nor CNA mentions the choice of law aspect of this issue. ACandS, however, primarily cites Pennsylvania cases,

while CNA's main authority is an Illinois case. Since this court's jurisdiction is based on diversity of citizenship, *see* 28 U.S.C. § 1332, the law of the forum state governs, including that state's choice of law rules. *Hartford Ins. Co. v. Occidental Fire & Cas. Co.*, 908 F.2d 235, 237 n. 5 (7th Cir.1990). Interpretation of insurance policies under Illinois rules are governed by the law of the state where the policy was issued, delivered, or where the last act completing the policy took place. *U.S. Fire Ins. Co. v. CNA Ins. Cos.*, 213 Ill.App.3d 568, 575, 157 Ill.Dec. 660, 663, 572 N.E.2d 1124, 1127 (1st Dist.1991). Although the record is unclear on this point, the policies at issue in this case were apparently endorsed and delivered in Pennsylvania. Therefore, Pennsylvania law applies. Nevertheless, Pennsylvania and Illinois have very similar contract interpretation rules, and the result here would be the same under either state's law.

 The interpretation of an unambiguous contract under either Pennsylvania or Illinois law is a matter of law for the court to decide. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 191 (7th Cir.1991) (applying Illinois law); *Realty Group Assoc., Inc. v. Divosevic*, — Pa.Super. ——, 596 A.2d 880, 883 (1991) (citing *Guardian Life Ins. Co. v. Zerance*, 505 Pa. 345, 479 A.2d 949, 953 (1984)). Ambiguities in an insurance contract, however, are strictly construed against the drafter, the insurer, with an eye toward effecting the contract's purpose of indemnifying the insured. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir.1987) (applying Illinois law); *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 926 (focus on reasonable expectations of the insured).

 The Other Insurance clauses in both CNA policies RDU9977990 and RDU8042787 state with reasonable clarity that the coverage only begins after any applicable primary insurance is exhausted. Neither of these clauses confine that limitation to the listed schedule of underlying primary policies. The two policies each also contain clauses defining "ultimate net loss" for coverage purposes as excluding amounts covered by other insurance. In RDU9977990, the clause excludes expenses that may be recovered "through any other valid and collectible insurance." The provision in RDU8042787 includes deductions for "other insurances ... other than the [listed] underlying insurance and excess insurance purchased specifically to be in excess of this policy...." Based on the insurance policies as a whole, their plain meaning does not support ACandS's claim that only the listed underlying primary policies need be exhausted before the CNA excess coverage begins. The CNA policies are both specifically designated as "umbrella" excess policies, designed to afford coverage only when all other types of insurance are exhausted. *See* 8A Appleman, *Insurance Law and Practice* § 4096, at 348, § 4909.85, at 453–54 (1981). Moreover, the CNA policies are not ambiguous with regard to the exhaustion requirement, and therefore the doctrine of *contra proferentum* (construe against drafter) does not come into play. *See Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 n. 3 (7th Cir.1990) (construe against drafter is a construction rule of last resort); *City of Chicago v. Dickey*, 146 Ill.App.3d 734, 738–39, 100 Ill.Dec. 412, 415–16, 497 N.E.2d 390, 393–94 (1st Dist.1986) (same). Therefore, the court cannot find as a matter of law that only the underlying primary policies listed on the CNA policies need be exhausted before the CNA excess coverage begins.

This court's reading of the umbrella excess policies at issue is consistent with the interpretation of such policies by other courts. *See, e.g., UNR Indus., Inc. v. Continental Cas. Co.*, 942 F.2d 1101, 1108 (7th Cir.1991) (burden on excess insurer to show coverage by other insurance); *Illinois Emcasco Ins. Co. v. Continental Cas. Co.*, 139 Ill.App.3d 130, 133, 93 Ill.Dec. 666, 668–69, 487 N.E.2d 110, 112–13 (1st Dist.1985) (discussing distinction between umbrella coverage and other excess coverage).

In sum, ACandS has failed to show that it is entitled to judgment as a matter of law on Count II of the amended complaint.

CNA is not barred, either by prior litigation or the policy language, from arguing in this court that ACandS must exhaust all its applicable primary coverage before the CNA umbrella excess coverage can be triggered.

### CONCLUSION

For the above reasons, ACandS's motion for summary judgment on Count II of the amended complaint is denied.

IT IS SO ORDERED.