2020 IL App (1st) 190741

No. 1-19-0741

Opinion filed July 23, 2020

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARK LATHROP, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
|     v. | ) | No. 18 CH 7280 |
| | ) | |
| SAFECO INSURANCE COMPANY, | ) | Honorable |
| | ) | Moshe Jacobius, |
|     Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Burke concurred in the judgment and opinion.
Presiding Justice Gordon concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1     Plaintiff, Mark Lathrop, was injured while riding his bicycle and made a claim on his

mother's auto insurance policy to defendant, Safeco Insurance Co. (Safeco), for uninsured

motorists coverage based on his collision with a hit-and-run driver. Safeco denied Lathrop's claim,

concluding that he failed to comply with the policy provision to report the accident involving a

hit-and-run driver to the police within 24 hours or "as soon as practicable" because he filed the

police report 11 days after the accident.

¶ 2    Lathrop filed a complaint in the circuit court for declaratory relief against Safeco, and the parties subsequently filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Safeco and against Lathrop.

¶ 3    On appeal, Lathrop argues that he complied with the policy provision to report the hit-and-run accident to the police within a reasonable time because he could not identify the offending driver or vehicle and no one else witnessed the incident; he was in shock after the collision and did not realize the seriousness of his injury until the pain increased days afterward and he sought medical treatment; he was not aware that a bicycle collision would trigger coverage under his mother's auto insurance policy; he had to travel to the police station to report the incident in person while he was suffering severe pain and wearing a neck brace; he timely made the police report after he realized he had suffered a severe neck fracture and determined that he wanted to bring a claim; and the passage of 11 days did not affect the ability of the police or Safeco to investigate the accident due to the lack of evidence in this case. Lathrop asks this court to reverse the ruling of the circuit court and order this matter to proceed to arbitration.

¶ 4    For the reasons that follow, we reverse the judgment of the circuit court and remand the case for further proceedings.[1]

¶ 5                              I. BACKGROUND

¶ 6    Based on the pleadings, affidavits, depositions, admissions, and exhibits on file, Lathrop, at the time of the incident in question, had worked as a laborer or handyman, had graduated from high school and taken some college-level courses on finance and commodity trading, and was

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

56 years old. On the afternoon of September 10, 2015, he was riding his bicycle south on Elmwood Street in Evanston, Illinois, in the direction of traffic. This was a residential area without a lot of traffic. He had passed a police station and was approaching Greenleaf Street when he heard a horn from the vehicle behind him. Before he could turn his head to look back, his left shoulder was struck by the passenger-side mirror of a passing white truck. That contact pushed Lathrop toward the parked vehicles on his right and caused him to fall and hit his forehead on the back of a parked truck. When his forehead hit the truck, his head snapped backwards. He fell to the ground with his bicycle, landing on his back.

¶ 7    Lathrop felt dazed but stood up after a minute. The offending truck driver did not stop. Lathrop did not observe any witnesses to the incident and did not know what to do. He had his cellphone in his possession but did not call the police because he was in shock and could not identify the license plate number or any markings of the offender's truck. Although Lathrop felt some neck and forehead pain immediately after the collision, he thought that the pain would subside and that medical treatment was unnecessary. His bicycle was damaged but still rideable. He decided to go home and rest, so he initially walked one-half block with his bicycle and then rode it about one mile to a bus stop. He took two buses to go home.

¶ 8    At the time of the incident, Lathrop lived with his mother in Northbrook, Illinois. When he arrived home, he was upset about what had happened and watched television. When his mother came home, he told her that he was hit by a truck and his neck "kind of" hurt. Over the next few days, Lathrop had headaches and felt increased neck pain. On September 13, 2015, he went to a hospital emergency room and underwent computed tomography (CT) scans of his cervical spine and head. He was diagnosed with a cervical odontoid fracture, given pain medication, and referred to a spine specialist. When Lathrop saw the spine specialist on September 18, 2015, Lathrop stated

that he injured his head and neck when a truck ran him off the road and pushed him into a parked car. Lathrop was in severe pain in the days following the collision and wore an immobilizing neck brace.

¶ 9      Lathrop's mother had a Safeco automobile insurance policy at the time of the hit-and-run incident. Because Lathrop had a serious neck injury, his mother and doctors advised him to file a police report regarding the hit-and-run accident. Lathrop had to report the collision at an Evanston police station in person because the matter was now an off-scene or delayed hit-and-run report. On September 21, 2015, Lathrop went to an Evanston police station and reported the hit-and-run incident.

¶ 10     Also in September 2015, counsel for Lathrop sent a demand for arbitration letter to Safeco concerning the personal injury Lathrop suffered in the collision. Lathrop, who was listed as a "rated driver" on his mother's Safeco auto insurance policy, sought compensation under the uninsured/underinsured motorists coverage and medical payments provisions of the policy. Lathrop resided with his mother at the time of the collision and was a "family member" as defined in his mother's Safeco policy. Lathrop provided a recorded statement to Safeco, and the parties exchanged written discovery. Lathrop also provided his medical records and deposition testimony about the collision under oath.

¶ 11     Lathrop's injury did not improve with conservative care, so he underwent a cervical fusion and wire stabilization of his odontoid fracture in January 2016.

¶ 12     In May 2018, Safeco informed Lathrop that he was not entitled to uninsured motorist bodily injury coverage under the policy due to his failure to report the hit-and-run accident to the police within 24 hours or as soon as practicable.

¶ 13    Lathrop then filed a complaint for declaratory relief, which asked the circuit court to find and declare that (1) Safeco was obligated to provide uninsured motorist coverage to Lathrop, (2) Lathrop was in full compliance with the insurance policy provision to give notice as soon as practicable, and (3) Safeco was obligated to proceed with arbitration according to the terms of the policy.

¶ 14    In its answer, Safeco denied Lathrop's allegation that he was an insured under the terms of his mother's Safeco policy and argued that the interpretation of the policy in relation to Lathrop's alleged facts was a legal matter for the court to decide and resolve. In its affirmative defenses, Safeco asserted that Lathrop failed to (1) cooperate in the investigation of this claim and (2) report the alleged hit-and-run incident to the police until 11 days after the occurrence, in violation of the policy provision that required a person to "report an accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved." Safeco argued that it had no duty to provide uninsured motorists coverage or other coverage to Lathrop.

¶ 15    In response, Lathrop denied the allegations in Safeco's affirmative defenses.

¶ 16    Thereafter, the parties filed cross-motions for summary judgment. Safeco argued that it did not owe Lathrop any uninsured motorists coverage under his mother's auto insurance policy because the policy terms were clear and exact and there was no dispute that Lathrop failed to comply with the condition precedent to report the alleged hit-and-run accident to the police within 24 hours or as soon as practicable. Specifically, Safeco argued that nothing impeded Lathrop from satisfying that condition precedent because he had his cellphone in his possession; had cycled past the Evanston police station shortly before the accident occurred; and was conscious, ambulatory, and not in need of immediate medical care after the accident. Safeco also argued that Lathrop failed to report the September 10 accident to the police after he received medical treatment from a

hospital on September 13 and was seen by a spine specialist on September 18. According to Safeco, Lathrop's prior personal injury lawsuits and involvement in collisions with vehicles as a bicyclist or pedestrian indicated that he was knowledgeable about seeking recovery for claimed injuries.

¶ 17    Lathrop argued that, given all the surrounding circumstances, he complied with the policy provision to report the hit-and-run accident to the police as soon as practicable, *i.e.*, within a reasonable time, when he went to an Evanston police station 11 days after the accident to file in person his off-scene report. Specifically, Lathrop argued that the Safeco policy requirement to report the hit-and-run accident to the police "as soon as practicable" was ambiguous because it was a subjective rather than a specific timeframe. Lathrop also argued that, despite the severe pain he was suffering, he was diligent in reporting the accident to the police when he learned about the seriousness of his injury, the potential coverage under his mother's auto insurance policy, and the police department's in-person reporting requirement.

¶ 18    In April 2019, the circuit court granted summary judgment in favor of Safeco and against Lathrop, finding that Lathrop was not entitled to uninsured motorists coverage under the policy because he failed to comply with a condition precedent to coverage. Specifically, the court found that the clear and unambiguous policy provision required Lathrop to report the hit-and-run accident to the police within 24 hours, "absent extenuating circumstances (*i.e.*, incapacitation)"; however, "[i]f extenuating circumstances were present, then [Lathrop] was required to report the accident to the police 'as soon as practicable.' " The court concluded that "no factor, event, or condition imped[ed] or inhibit[ed Lathrop] from reporting his accident to the police within 24 hours because the record established that, shortly before the accident, Lathrop had cycled past an Evanston police station, which was about one-half mile away from the scene of the accident. Furthermore, Lathrop "was conscious, ambulatory, and not in need of immediate care after the accident." Also, he was

in possession of his cell phone, his bicycle was still rideable, and he was able to cycle to a bus stop and take two buses home.

¶ 19    When considering Lathrop's sophistication in matters of commerce and insurance, the court noted his education level and prior involvement "in multiple prior accidents" and two personal injury lawsuits. The court did not find credible Lathrop's testimony that he did not know his mother's automobile insurance policy would have provided coverage for his bicycle hit-and-run accident and required him to report the accident to the police. Finally, the court stated that a delay in reporting a hit-and-run accident hinders the ability of the police or the insurer to successfully investigate and obtain evidence on the identity of the vehicle or driver who fled the accident scene.

¶ 20    Lathrop appealed.

¶ 21                                      II. ANALYSIS

¶ 22    First, Lathrop argues that the circuit court erred by granting summary judgment in favor of Safeco because the ambiguous language of the disputed policy provision, which must be construed liberally in favor of coverage, must be interpreted to require a person seeking uninsured/underinsured motorists coverage to report the accident to the police within 24 hours but, if the matter involved a hit-and-run driver, as in the instant case, then the person seeking uninsured/underinsured motorists coverage must report the accident to the police as soon as practicable. Lathrop argues that the circuit court erroneously held him to a standard not stated in the policy when the court construed the "as soon as practicable" reporting requirement to apply only when extenuating circumstances, like incapacitation, impeded or inhibited a claimant from reporting the accident to the police within 24 hours.

¶ 23    Second, Lathrop argues that he was entitled to summary judgment on his claim to declare Safeco obligated to provide uninsured motorists coverage to him and proceed to arbitration because the undisputed facts established that he reported the accident to the police as soon as practicable where he did not realize the severity of his injuries until he sought medical treatment, he did not know a bicycle accident would trigger coverage under his mother's auto insurance policy, and Safeco was not prejudiced by his report to the police 11 days after the accident because that passage of time had no effect on the investigation of his claim since he could not identify the offending driver or truck and no one else witnessed the accident.

¶ 24    Safeco argues that the circuit court correctly interpreted the policy provision to require Lathrop to report the hit-and-run accident to the police within 24 hours and not "as soon as practicable." However, even if the "as soon as practicable" reporting requirement applied to Lathrop, Safeco argues that he failed to meet that requirement because the undisputed facts show that he was capable of reporting the accident sooner than 11 days after its occurrence.

¶ 25    On appeal, we review a trial court's entry of summary judgment *de novo* (*Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993)), which means our review is independent of the trial court's reasoning and decision (*Bank of America*, *N.A. v. Adeyiga,* 2014 IL App (1st) 131252, ¶ 56 ("*De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform.")).

¶ 26    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2016); *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). The function of summary judgment is not to try cases but to isolate those cases that present only legal

questions and thereby enable the court, as the trier of law, to summarily dispose of the legal questions involved. *City of Chicago v. Dickey*, 146 Ill. App. 3d 734, 737 (1986). Summary judgment "is to be encouraged as an aid in the expeditious disposition of a lawsuit." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 27    When the parties file cross-motions for summary judgment, they agree that there are no genuine issues of material fact and ask the court to decide the questions presented as a matter of law and based on the record. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25; *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "[W]here there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Id.* ¶ 53.

¶ 28    "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). In construing an insurance policy, the court follows the rules of contract interpretation to ascertain the intent of the parties to the contract. *Id.* at 878-79; *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). To ascertain the meaning of the policy's words, the court must view the policy as a whole with due regard to the type of insurance purchased, the risk undertaken, and the overall purpose of the contract. *AMCO Insurance Co. v. Erie Insurance Exchange*, 2016 IL App (1st) 142660, ¶ 20.

¶ 29    In Illinois, the general rule is that, when an insurer attempts to place limits on the uninsured motorist provisions of its insurance policy, the limitations must be construed in favor of the policyholder and strongly against the insurer. *Hartford Accident & Indemnity Co. v. LeJeune*, 114 Ill. 2d 54, 59 (1986). If the words in an insurance policy are unambiguous, a court must give the words their plain, ordinary, and popular meaning. *Indiana Insurance Co. v. Liaskos*, 297 Ill. App. 3d 569, 573 (1998). But if the words are susceptible to more than one meaning, they are ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy. *Konami (America), Inc.*, 326 Ill. App. 3d at 879. However, a "policy provision is not rendered ambiguous simply because the parties disagree as to its meaning," and courts "will not strain to find an ambiguity where none exists." *Founders Insurance Co.*, 237 Ill. 2d at 433. "Although 'creative possibilities' may be suggested, only reasonable interpretations will be considered." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

¶ 30    Under his mother's Safeco auto insurance policy, Lathrop was listed as an additional driver and also was covered as a family member, *i.e.*, a person who was related to the insured by blood and a resident of the insured's household. The insurance policy provision at issue provides, in relevant part:

"PART E—DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

\* \* \*

C. A person seeking Uninsured/Underinsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit and run driver is involved."

¶ 31     Based on the principles of contract interpretation, we find that the disputed policy provision required Lathrop, a person seeking uninsured motorists coverage, to report the accident involving the hit-and-run driver to the police within 24 hours or as soon as practicable. We reject the strained interpretation urged by Lathrop, which is not consistent with the rules of grammar and punctuation, that this provision created two separate accident reporting requirements: either as soon as practicable if a hit-and-run driver was involved or within 24 hours if the accident did not involve a hit-and-run driver. We also reject the interpretation urged by Safeco, which adds terms and conditions not expressed in the language of the policy to conclude that Lathrop was required to report the accident to the police within 24 hours because no extenuating circumstances prevented him from making such a report and the "as soon as practicable" reporting requirement applied only in situations involving extenuating circumstances.

¶ 32 "Practicable" is defined as:

> "that which may be done, practiced, or accomplished; that which is performable, feasible, possible ***. Within liability policy providing that when accident occurred, written notice should be given by or on behalf of insured to insurer *** as soon as practicable, 'practicable' was held to mean feasible in the circumstances. Frey v. Security Ins. Co. of Hartford, D.C.Pa., 331 F.Supp. 140, 143." Black's Law Dictionary 1172 (6th ed. 1990).

In the context of a policy covering liability for personal injury and property damage, Illinois courts have construed the phrase "as soon as practicable" to mean within a reasonable time, and what is reasonable depends on the facts and circumstances of the case. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311-12 (2006) (citing *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281-82 (1974)).

¶ 33 Lathrop argues that the issue of whether he reported the hit-and-run accident to the police within a reasonable time should be analyzed under the same factors Illinois courts may use to determine whether an insured gave the insurer reasonable notice of an occurrence or lawsuit that falls within the coverage of the policy, *i.e.*, (1) the specific language of the policy's notice provision, (2) the insured's sophistication in commerce and insurance matters, (3) the insured's awareness of an event that may trigger insurance coverage, (4) the insured's diligence in ascertaining whether policy coverage is available, and (5) prejudice to the insurer. See *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185-86 (2010); *Country Mutual Insurance Co.*, 222 Ill. 2d at 313. Lathrop made this same argument to the circuit court, which stated that the five-factor analysis did not govern the interpretation of the police report

policy provision at issue here. Nevertheless, the circuit court conducted the five-factor analysis and concluded that Lathrop's police report 11 days after the accident was not made within a reasonable time under the circumstances.

¶ 34    We agree with the circuit court that the five-factor analysis used to determine the timeliness of an insured's notice to its insurer is not entirely relevant to and thus does not govern the determination of whether Lathrop reported the accident to the police within a reasonable time. Generally, the question of what constitutes a reasonable time is a question of fact to be decided by the jury, but if—as here—there is no controversy as to the facts, the question of reasonableness is for the judge to decide. *Jones v. Universal Casualty Co.*, 257 Ill. App. 3d 842, 853 (1994). "Ordinarily, we will not reverse a trial court's findings of fact unless they are against the manifest weight of the evidence." *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608 (2009). Here, however, we review *de novo* the circuit court's judgment that Lathrop's 11-day wait to report the accident to the police was unreasonable because the only evidence presented to the circuit court was documentary and the circuit court did not have the benefit of viewing and hearing Lathrop testify when the court determined his credibility. See *The Travelers Indemnity Co. v. Rogers Cartage Co.*, 2017 IL App (1st) 160780, ¶ 12; see also *Danada Square, LLC*, 392 Ill. App. 3d at 608 (where the question is the legal conclusion to be drawn from a given set of facts, our review is *de novo*); *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001) ("If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court's judgment.").

¶ 35    A determination on whether an insured performed a required action within a reasonable time involves a flexible analysis that may vary depending on the nature, purpose, and

circumstances of such action. Requiring an insured to report an accident involving a hit-and-run driver to the police within a reasonable time advances the interests of extending coverage for legitimate claims and protecting the insurer from fraudulent claims. Considering the undisputed facts and circumstances here, we judge that Lathrop satisfied the policy requirement to report the accident to the police within a reasonable time when he made that report 11 days after the accident. Although Lathrop had his cell phone at the time of the accident and had cycled past a police station that was about a one-half mile from the scene of the accident, he did not call the police because he was in shock, did not know what to do, and had no information to give the police about the identity of the offending driver or truck and no one else witnessed the accident on that residential street with little traffic.

¶ 36      Furthermore, Lathrop mistakenly thought that he was not seriously injured and the pain would subside after he went home and rested. Instead of cycling back to the police station, which was in the opposite direction of his route home, Lathrop walked a short distance and then rode his bicycle to a nearby bus stop so he could take two buses to go home. After two days, he went to a hospital emergency room because his head and neck pain became more severe. He was diagnosed with a cervical odontoid fracture and referred to a spine specialist. Three days later, he went to his appointment with that specialist.

¶ 37      In his deposition, Lathrop testified that his dyslexia adversely affected his reading comprehension and he was not aware that his bicycle accident could trigger coverage under his mother's auto insurance policy, which he did not purchase and had never read. Although Lathrop's assertion about his inexperience in insurance matters was not credible based on his prior litigation of personal injury claims as a bicyclist or pedestrian against drivers, no evidence showed that the

prior litigation involved uninsured motorists coverage under his mother's or another person's auto insurance policy.

¶ 38    After Lathrop realized the severity of his injuries, he followed the advice of the medical staff and his mother to file a police report, which he learned had to be done in person at an Evanston police station because the matter was now an off-scene or delayed hit-and-run report. Despite being on medication for his severe head and neck pain, he went to the Evanston police station 11 days after the accident and reported the matter. Under the circumstances of this case, the elapsed time of 11 days was not outside the ambit of what a fair-minded person could conclude to be reasonable. See *Strom International, Ltd. v. Spar Warehouse & Distributors, Inc.*, 69 Ill. App. 3d 696, 701 (1979) (discussing decisions from other jurisdictions that determined as a matter of law the question of what constituted a reasonable time to perform an action required by a contractual provision).

¶ 39                                    III. CONCLUSION

¶ 40    We conclude that Lathrop, under the undisputed facts of this case, complied with the unambiguous policy provision to report the hit-and-run accident to the police as soon as practicable. Thus, the circuit court erred in denying Lathrop's motion for summary judgment and in allowing Safeco's cross-motion.

¶ 41    For the foregoing reasons, we reverse the judgment of the circuit court that granted summary judgment in favor of Safeco and against Lathrop. We remand this cause for further proceedings.

¶ 42    Reversed and remanded.

¶ 43    PRESIDING JUSTICE GORDON, concurring in part and dissenting in part:

¶ 44    I must respectfully dissent from the majority's reversal of the trial court's denial of plaintiff's motion for summary judgment, and I concur with the majority's reversal of the summary judgment in favor of defendant, but for different reasons, and as a result, I must write separately.

¶ 45    Our Illinois Supreme Court has found that summary judgment "is a drastic means of disposing of litigation, and this court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245-46 (2007). "Summary judgment should not be allowed unless the moving party's right to judgment is clear from doubt, because plaintiffs are not required to prove their cases at the summary judgment stage." *Murray*, 224 Ill. 2d at 246. As a result, summary judgment is not appropriate (1) if "there is a dispute as to a material fact" (*Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)), (2) if "reasonable persons could draw divergent inferences from the undisputed material facts" (*Jackson*, 185 Ill. 2d at 424), or (3) if "reasonable persons could differ on the weight to be given the relevant factors" of a legal standard (*Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007)).

¶ 46    The issue in this case is whether plaintiff complied with the unambiguous policy provision of defendant's insurance policy to report the hit-and-run incident to the police as soon as practicable when plaintiff first filled out a police report 11 days after the incident.

¶ 47    Whether reasonable notice has been given depends on the facts and circumstances of each case. Illinois courts apply the following factors when determining whether notice has been given within a reasonable time: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an

event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185-86 (2010) (citing *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 313 (2006)).

¶ 48    In reversing the trial court, the majority states that, "[c]onsidering the undisputed facts and circumstances here, we judge that Lathrop satisfied the policy requirement to report the accident to the police within a reasonable time when he made that report 11 days after the accident" (*supra* ¶ 35) without applying the factors needed to make that determination. When I apply the factors, I find that there are factual issues that must be decided. The trial court applied the five factors and made factual determinations on a motion for summary judgment when factual issues should be decided by the trier of fact. Plaintiff claimed he was "an unsophisticated insured." The trial court pointed out that he attended college-level courses, where he studied finance for over a year, as well as commodity trading, and had been in multiple prior accidents. However, the trial court made a factual determination that any reasonable driver would recognize that an accident might trigger insurance coverage regardless of whether it was a hit-and-run.

¶ 49    There are issues concerning factors two, three, and four as to plaintiff's sophistication in being aware that his incident triggered uninsured motorist coverage in his mother's insurance policy and whether he was diligent. Uninsured motorist coverage is a specific coverage that most nonlawyers may not be aware of. The fact that he had other incidents on his bicycle where he made insurance claims does not mean he was aware of the fact that this incident on a bicycle triggered the uninsured motorist coverage in his mother's insurance policy. In addition, his medical physician's records disclose that he told his physician that he was run off the road, not struck by

the mirror of the truck. If it is later proven that there was no contact, it is possible there would be no liability for the alleged hit-and-run driver and that would be prejudicial to defendant without a trial on the merits. Most importantly, there is a factual issue as to whether defendant was prejudiced by the plaintiff's 11-day notice. Although I find that ordinarily an 11-day notice would be reasonable, a court must follow the factors set forth by the supreme court in making that determination. Since the trial court did not utilize these factors, I would reverse the summary judgment in favor of defendant and affirm the denial of plaintiff's motion for summary judgment and instruct the trial court to follow the five factors our supreme court set forth in a trial on the merits.

---

**No. 1-19-0741**

---

| | |
|---|---|
| **Cite as:** | *Lathrop v. Safeco Insurance Co.*, 2020 IL App (1st) 190741 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-7280; the Hon. Moshe Jacobius, Judge, presiding. |
| **Attorneys for Appellant:** | George G. Argionis and Evan Finneke, of Argionis & Associates, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Matthew O. Sitzer and Matthew C. Wolfe, of Shook, Hardy & Bacon L.L.P., of Chicago, for appellee. |