DANADA SQUARE, LLC, Plaintiff-Appellant, v. KFC NATIONAL MANAGEMENT COMPANY, Defendant-Appellee.

Second District   No. 2—08—0472

Opinion filed June 12, 2009.

Steven P. Rouse and Paul B. Porvaznik, both of Menges & Molzahn, LLC, of Chicago, for appellant.

Frances P. Kao, Amanda S. Williamson, and Javitt Adili, all of Skadden, Arps, Slate, Meagher & Flom LLP, of Chicago, for appellee.

JUSTICE SCHOSTOK delivered the opinion of the court:

The plaintiff, Danada Square, LLC (Danada), the operator of a shopping center, sued the defendant, KFC National Management Company (KFC), a former tenant, following the early termination of a retail lease between Danada and a KFC franchisee. The trial court entered a judgment limiting the damages recoverable by Danada to payments already made by KFC. Danada appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. In 1988, Danada's predecessor leased KFC a stand-alone building (the Premises) in the Danada Square shopping center in Wheaton. The term of the lease (Lease) was 15 years, with the possibility of renewal for three five-year terms. KFC occupied the Premises through May 2000. After that, Danada and KFC agreed that TEC Foods, a KFC franchisee, would assume the Lease. Under the terms of Danada's consent to the assignment, although KFC was no longer a party to the Lease, it remained a guarantor of the obligations contained in the Lease, including any obligations under lease extensions if TEC exercised the option to renew the Lease. After the expiration of the initial term, TEC opted to extend the Lease for the five-year period from February 1, 2004, through January 31, 2009.

In May 2005, TEC filed for bankruptcy. The bankruptcy court issued an order approving the rejection of TEC's executory contracts including the Lease, effective November 30, 2005. TEC vacated the Premises in November 2005, allegedly leaving them in some disrepair. Seeking to explore the terms under which KFC might rent the Premises for the remainder of the extended Lease term or otherwise satisfy its obligations in light of TEC's default, KFC and Danada agreed to negotiations, during which KFC agreed to pay the full amount due monthly under the Lease.

KFC and Danada were unsuccessful in negotiating a new lease. Danada tendered a contract to KFC in December 2005 that contained essentially the same terms as those in the Lease, but also contained a provision allowing Danada to retake possession of the Premises on 60 days' notice (the parties referred to this as "the 60-day out"). In April 2006, KFC informed Danada that it would accept all of the proposed terms except for the 60-day out. Thereafter, KFC ceased making monthly payments to Danada. (It made the monthly payments from December 2005 through April 2006.) In February 2007, Danada entered into a new lease with a KFC franchisee at a lower rent than that in the Lease. The new lease did not contain the 60-day out.

In June 2006, Danada filed a two-count complaint against KFC. The first count alleged that KFC breached the Lease and owed Danada damages of over $300,000, including unpaid rent from May 2006 through January 2007, the amount it cost Danada to relet the Premises, the difference between the rent under the Lease and the rent Danada was getting under the new lease (from February 2007 through the remainder of the Lease extension term ending January 31, 2009), and prejudgment interest. In the second count Danada sought possession of the Premises under the Illinois Forcible Entry

and Detainer Act (Act) (735 ILCS 5/9—101 *et seq.* (West 2006)). The parties resolved the second count through an agreed order of possession.

The parties filed three motions seeking partial or complete summary judgment. In June 2007 Danada filed a motion for summary judgment, arguing that it was undisputed that KFC's assignee had breached the Lease and that Danada was owed certain damages under the Lease and under Illinois law. In September 2007, KFC filed a motion for partial summary judgment regarding the damages recoverable under the Lease, arguing that, under the terms of the Lease, damages were limited to no more than the amount of unpaid rent and did not include reletting costs. Finally, in December 2007, KFC filed a cross-motion for summary judgment, contending that as a matter of law Danada was not entitled to damages under the Lease, because Danada unreasonably refused KFC's offer to rent the Premises without the 60-day out, thereby breaching the landlord's duty under section 9—213.1 of the Act (735 ILCS 5/9—213.1 (West 2006)) to make reasonable efforts to mitigate damages.

On January 22, 2008, the trial court *sua sponte* entered an order stating that, as neither party had filed a jury demand, the case would be resolved via a stipulated bench trial. On January 24, 2008, the date set for hearing on the various motions for summary judgment, the trial court and the parties discussed that order. KFC's attorney expressed some doubt that the evidence presented in support of the summary judgment motions would be sufficient to permit the resolution of the case through a stipulated bench trial, but he eventually agreed to the procedure. Danada's attorney stated that Danada believed that this was a very straightforward matter, "so we do not think that credibility of the witnesses is an issue," and "we feel that this matter can be set, if not on summary judgment, on a stipulated bench trial." The parties also agreed that in reaching its decisions the trial court could consider as admissible evidence all of the exhibits to the various summary judgment motions and the briefs, which included among other things affidavits, excerpts from discovery depositions, and correspondence.

The trial court stated that it wished to first address the issue of liability under the Lease, followed by the question of whether Danada could recover damages other than unpaid rent, and last the issue of Danada's mitigation of damages. Following oral argument on the first issue, the trial court ruled that the Lease was a valid contract; "that there was a guarantee; that [Danada] performed under the contract; [and] that there was a breach of the contract resulting in damages." The trial court further stated, "As far as that goes, summary judg-

ment is granted" on those issues. The parties then argued the second issue, the recoverability of damages other than unpaid rent under the Lease. KFC argued that paragraphs 10 and 29 limited the damages obtainable in the event of a default to no more than the amount of the unpaid rent. Danada argued that paragraph 12 of the Lease and Illinois contract law permitted it to recover reletting costs and the other items of damages that it sought. In ruling, the trial court broke the issue of damages down into two portions: the damages recoverable while the parties were negotiating during the period from November 2005 through April 2006, and the damages recoverable after that point. The trial court held that the only damages for which KFC was liable during the first period was the amount of the monthly payments due under the Lease and that, because KFC had already paid this amount, no further damages were due for that period. As to the damages from May 2006 forward, the trial court stated that the recoverability of those damages depended on the resolution of the issue of mitigation, and so the court was denying summary judgment on the remaining damages but would address that issue if necessary after resolving the issue of mitigation.

At the outset of the oral argument on the third issue, the trial court stated that the issue of whether Danada had fulfilled its duty to mitigate damages could not be resolved by summary judgment. It asked the parties how they would like to proceed, and they agreed to go ahead and argue the issue then and there. Because the issue of mitigation is the crux of this appeal, we summarize here the relevant documentary evidence that was presented to the trial court during briefing of the various summary judgment motions.

The Premises were vacant from December 2005 until February 2007. During the period from the fall of 2005 through April 2006, Danada and KFC were attempting to reach agreement on a new lease. Melanie Bootes, an attorney employed by KFC who participated in the negotiations, testified in deposition that KFC received a proposed lease from Danada in December 2005. The proposed lease contained terms that were substantially similar to those in the Lease, with the addition of the 60-day out. According to Danada, it included this provision because it was considering razing the Premises and building a larger building on that lot. The evidence is not completely clear on when KFC told Danada that it would not accept the 60-day out. In an affidavit submitted in support of KFC's cross-motion for summary judgment, Bootes averred that KFC advised Danada in February 2006 that the 60-day out was unacceptable to KFC because it would be "economically unviable." However, the record also contains a February 9, 2006, e-mail that Bootes sent to other KFC employees, in which

she mentioned Danada's desire for the 60-day out and stated that, "[i]f our interest in operating this store is solely because of our contingent lease liability, this is a good deal for us." In any event, it is undisputed that on April 21, 2006, KFC sent Danada a letter stating that KFC was not willing to enter into the proposed lease, because the 60-day out effectively resulted in a short-term lease that was "not suitable for KFC," but that KFC remained "willing to enter into a new lease for the Premises for a substantially similar term as set forth in the Lease" and would also be willing to consider a longer term than that provided by the Lease. In the letter, KFC also stated its position that, if Danada refused its offer to enter into a new lease with terms similar to those in the former Lease but without the 60-day out, Danada would be breaching its duty to mitigate damages. Bootes testified that KFC never received any proposed lease from Danada that did not contain the 60-day out.

Matthew Smetana, a commercial retail broker who handled marketing of vacancies and lease negotiations on behalf of Danada, testified in deposition that he was called in early 2006 to find a new tenant for the Premises. One of the options he understood Danada was pursuing was razing the existing building to build a larger one. Architectural drawings and rent projections for the new building were created during this period. By the end of 2006, however, Danada was no longer discussing the possibility of razing and rebuilding, and the lease proposals it offered to the KFC franchisee who eventually rented the Premises did not contain the 60-day out.

Smetana also testified regarding the steps Danada took to find a new tenant for the Premises. The parties argue about the extent and efficacy of these steps, but it is undisputed that after February 2006 Danada's agents: placed signs near the entry points to the shopping center, advertising that there was space available to rent; listed the Premises in an online brochure on a Web site and sent weekly e-mail "blasts" to real estate brokers and possible clients, listing the Premises as part of the space available at the shopping center; while attending a trade show, communicated to approximately 50 different retailers that the Premises were available; and communicated with at least seven prospective tenants. Once the order of possession was entered in August 2006, Smetana also placed window signs in the Premises advertising their availability. Smetana sought to obtain tenants at the rental rate of approximately $50 per square foot, slightly higher than the rental rate under the Lease, which was approximately $47 per square foot. However, the new lease that was ultimately signed with the current KFC franchisee, commencing in February 2007, has an initial rental rate that is lower than the rate under the Lease.

In arguing whether Danada met its obligation to mitigate damages arising from the terminated Lease, Danada focused on the various activities it undertook to relet the Premises, and characterized the failure of the negotiations with KFC as due to KFC's refusal to accept a new lease. Danada argued that the 60-day out was a provision that it desired but did not insist upon, as evidenced by the fact that there was no similar provision in its lease with the KFC franchisee who ultimately rented the Premises. Danada also pointed to the deposition testimony of Smetana who, when asked if he was aware that in early 2006 Danada was insisting on the inclusion of the 60-day out, stated that he was not. (Smetana provided no further explanation of his understanding of Danada's position on the 60-day out.) KFC contended that Danada did insist upon the 60-day out, as it knew of KFC's opposition to the provision but never forwarded a proposal without it or otherwise indicated that the provision could be removed. KFC argued that the 60-day out was commercially unreasonable because it effectively rendered any lease a short-term lease that was unattractive to prospective tenants, including KFC. In support, KFC pointed to Smetana's admission that, in his opinion, the 60-day out made it more difficult to market the property, and to the fact that Danada was unable to find a new tenant until it removed the 60-day out from its lease proposals. KFC contended that, if Danada had not insisted on an unreasonable term (the 60-day out), Danada could have relet the Premises to KFC immediately on the same terms as those in the Lease without any loss of rent or other costs and that, therefore, Danada's ability to recover damages should be cut off as of April 2006, when it rejected KFC's offer.

The trial court ruled in favor of KFC on the issue of whether Danada had met its duty to mitigate, stating:

"The record is abundantly clear that when TEC, T-E-C, was vacating or leaving the premises, that the owners and managers of Danada Square had under consideration raising [sic] the building and putting up a substantially bigger structure; that this was not—this went beyond consideration in that the evidence is they had drawings made up; that due to this, the inference that I draw from that is the—Danada Square would not lease this property without the ability to vacate the lease in 60 days; that KFC stood ready, willing and able to take over the lease; that the—Danada Square insisted [on] this provision and, therefore, breached their duty to mitigate their damages.

\*\*\*

Since KFC was ready, willing and able to fulfill the [L]ease and since Danada Square breached its duty to mitigation [sic], then, as

to the affirmative defense, there are no damages owing by the defendant, KFC."

The trial court stated that this was a finding of fact. The parties then discussed the written order to be entered on the three motions for summary judgment. The trial court stated that it granted Danada's motion insofar as it found that Danada had fulfilled its obligations under the Lease and that KFC was liable for TEC's breach of the Lease. However, the issue of the damages due for the breach of the Lease had been reserved until the trial court heard argument on the remaining motions and issues. KFC's motion for partial summary judgment was granted in that the trial court agreed that the terms of the Lease limited the damages recoverable to no more than the total unpaid rent. Thus, the trial court determined that, for the period from December 2005 through April 2006, KFC was liable only for monthly payments for rent, which it had already paid. On the issues of the damages due after April 2006 and the duty to mitigate, the trial court stated:

"This was a question of fact for the finder of fact. As a matter of fact, I find that there was a breach of [the] duty to mitigate."

However, the written order prepared by the attorneys stated the resolution of the issue of mitigation this way: "For the reasons set forth on the record, the cross-motion for summary judgment is granted, the Court finding that the Plaintiff breached its duty to mitigate damages pursuant to 735 ILCS 5/9—213.1." Danada moved for reconsideration, the trial court denied the motion, and Danada filed a timely notice of appeal.

## ANALYSIS

On appeal, Danada raises three issues: (1) whether "the trial court erred when it granted KFC's cross-motion for summary judgment and found that Danada failed to mitigate its damages pursuant to 735 ILCS 5/9—213.1"; (2) whether the trial court erred in ruling that KFC did not owe Danada any rent or other payments after April 2006; and (3) whether the trial court improperly denied Danada's motion to reconsider and to reopen proofs. All of these issues revolve around the issue of whether Danada met its obligation to mitigate damages, and thus we focus on that issue. First, however, we must clarify the nature of the trial court's judgment on that issue.

### A. Nature of the Judgment and Standard of Review

The written court order entered on January 24, 2008, recites that the trial court granted KFC's cross-motion for summary judgment based on Danada's failure to mitigate damages. This portion of the order is contradicted by the trial court's comments throughout the

hearing on January 24, during which it stated that the issue of mitigation could not be resolved by summary judgment and that, in ruling on the issue, it had made findings of fact. The trial court repeated and clarified the nature of its ruling at the April 24, 2008, hearing on Danada's motion for reconsideration:

"THE COURT: I don't want to sound like a broken record. This is not summary judgment. This is to reconsider the finding after a bench trial.

Do you have—it sounds like you're finished with your argument.

MR. PORVAZNIK [Danada's Attorney]: Well I guess—and I apologize. I think I'm missing something. I guess how can there be a bench trial when there was no witness testimony, there was no—this was decided on the briefs and the evidentiary record presented to you.

THE COURT: I do not have the transcript in front of me. I assume each of you have the transcript.

MR. PORVAZNIK: We do.

THE COURT: Okay. My recollection, and the transcript is the true record, my recollection is not the record, but my recollection is Danada was asked whether it wanted to proceed with this as a bench trial based upon depositions that had been submitted, that the reason for this is the facts were not controverted, the facts were not at issue, and there was no reason for the trier of fact to observe the witnesses.

Each party agreed that the testimony—in essence agreed that the testimony is uncontradicted when they filed their cross-motions for summary judgment, and both said there's no genuine issue of material fact, there is—or there was not to be a jury in this case, there was a judge sitting alone who had read all the transcripts.

If that is the testimony in the case, you wouldn't call witnesses to just repeat what's already in the record."

The trial court then confirmed with the parties that Danada's attorney had in fact consented to the stipulated bench trial procedure, and it reiterated that its ruling was based on inferences it drew from the evidence following a stipulated bench trial.

On appeal, Danada does not challenge the trial court's decision to proceed via a stipulated bench trial on the issue of mitigation. However, Danada mistakenly argues as if the trial court's ruling were a grant of summary judgment, asserting that the issue is whether there are any genuine issues of material fact. Perhaps because of the error in the written order, Danada is apparently still confused on this point, despite the trial court's explanations of the matter. As we have described, the trial court's ruling was made after a trial, and the portion of the written order reciting that the trial court granted KFC's

cross-motion for summary judgment is simply incorrect. Based on the trial court's comments, the order should have stated that the trial court denied KFC's cross-motion for summary judgment, conducted a stipulated bench trial, and found that Danada breached its duty to mitigate damages. When there is a conflict between the trial court's oral pronouncement and its written order, the oral pronouncement controls. *In re Tr. O.*, 362 Ill. App. 3d 860, 868 (2005).

■ To some extent, we can understand why Danada was confused about the nature of the trial court's procedures and rulings. The question of whether a landlord has met its statutory duty to mitigate its damages is, generally speaking, a question of fact. *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 31 (1993). Here, the great majority of the relevant facts presented to the trial court were undisputed, including: the terms of the proposed lease Danada sent KFC in December 2005, the inclusion of the 60-day out in that lease, KFC's rejection of the 60-day out and willingness to accept the remaining terms of the proposed lease, KFC's cessation of monthly payments after April 2006, Danada's making of at least some efforts to relet the Premises, the omission of the 60-day out in the lease into which Danada eventually entered in February 2007, and the eventual rental of the Premises at less than the monthly rent KFC was willing to pay. Nevertheless, merely because the parties have filed cross-motions for summary judgment, and many of the facts are undisputed, does not compel the conclusion that there are no triable issues of fact in the case. *City of Oakbrook Terrace v. Suburban Bank & Trust Co.*, 364 Ill. App. 3d 506, 510 (2006). If there are any remaining factual disputes that would be material to the outcome, or if reasonable people could draw different inferences from the undisputed facts, summary judgment is inappropriate. *Mountbatten Surety Co. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 867 (2004). Here, the parties dispute whether Danada "insisted" on the inclusion of the 60-day out in any lease it offered KFC and whether it acted unreasonably in rejecting KFC's offer to enter into a new lease without that provision. The trial court made a factual finding that Danada did insist on the inclusion of the 60-day out in its dealings with KFC, and it further found that KFC was ready, willing, and able to enter into a new lease on the same terms as those in the old Lease if the 60-day out were removed. From these facts, the trial court determined that Danada breached its duty to mitigate, because Danada could have avoided all of its damages if it had been willing to accept KFC's offer. The record is clear that the trial court made these determinations in its role as trier of fact, not on summary judgment.

Ordinarily, we will not reverse a trial court's findings of fact unless they are against the manifest weight of the evidence. *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 542 (2007). Where the only evidence presented was documentary and thus the trial court was not engaged in credibility determinations, however, we review the trial court's decisions *de novo*. *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941, 952 (2004). Similarly, where the question is the legal conclusion to be drawn from a given set of facts, our review is *de novo*. *Hurwick*, 351 Ill. App. 3d at 952; see also *Samour*, 224 Ill. 2d at 542 (where the case does not involve administrative review, a trier of fact's determination of whether a statute was complied with is reviewed *de novo*). Therefore, although the trial court did not grant summary judgment on the issue of mitigation of damages, we review its ruling *de novo*.

### B. Whether Danada Breached Its Duty to Make Reasonable Efforts to Mitigate Its Damages

■ Under section 9—213.1 of the Act (735 ILCS 5/9—213.1 (West 2006)), "a landlord or his or her agent shall take reasonable measures to mitigate damages recoverable against a defaulting lessee." The landlord bears the burden of proving that it complied with the statutory duty of mitigation. *Snyder v. Ambrose*, 266 Ill. App. 3d 163, 166 (1994). If a landlord cannot show that it took reasonable steps to mitigate its damages, the damages that it could otherwise recover are reduced, and "losses which reasonably could have been avoided are not recoverable." *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 293 (1998). In a case decided prior to the enactment of section 9—213.1 but based upon similar common-law principles, we held that a landlord's thwarting of a tenant's efforts to find a reasonable sublessee cut off the tenant's liability under the lease after that point. *Chicago Title & Trust Co. v. Hedges Manufacturing Co.*, 91 Ill. App. 3d 173, 179 (1980).

Danada argues that the evidence shows that it took reasonable steps to mitigate its damages, including the various actions it took to advertise the vacancy of the Premises, and that the rental rate it sought was not unreasonable, being only slightly higher than the rent under the Lease. KFC contends, however, that regardless of these steps, Danada's inclusion of the 60-day out was unreasonable and led to the rejection of a suitable tenant (KFC) that was ready, willing, and able to rent the Premises on terms essentially identical to those in the Lease, which would have prevented Danada from incurring any of the damages it seeks. Danada's sole response to this argument is that it did not really insist on the 60-day out, as shown by Smetana's state-

ment that he "was not aware" that in early 2006 Danada was insisting on including the 60-day out in any proposed leases and by the fact that the lease Danada eventually signed for the Premises did not include the 60-day out. Danada also points to Bootes' e-mail, which suggests that, as of February 9, 2006, KFC was considering accepting the 60-day out.

■ Our review of the evidence leads us to conclude that, as the trial court found, Danada indeed insisted on the inclusion of the 60-day out in all of its negotiations with KFC. The only lease proposal Danada forwarded to KFC contained the 60-day out, and although KFC stated unequivocally in its April 21, 2006, letter that it was unwilling to enter into a lease containing the provision, Danada did not send KFC any lease proposal without the provision or otherwise communicate that it was willing to remove the provision. None of the evidence Danada points to shows that it was in fact willing to consider removing the 60-day out during the time that it was negotiating with KFC: Smetana simply stated that he was unaware of Danada's position, and Danada agreed to omit the 60-day out only once it abandoned the possibility of redeveloping the Premises, late in 2006. Nor does KFC's willingness to consider the benefits and costs of the 60-day out in February 2006 undermine KFC's argument that it was unreasonable for Danada to refuse to lease to KFC without the provision. The evidence shows that, in April 2006, KFC was ready, willing, and able to enter into a lease without the 60-day out and that Danada refused to proceed with such a lease, preferring to explore other opportunities that might eventually be more profitable. Although Danada was entitled to exercise its business judgment in this manner, Danada cannot compel KFC to bear the costs of its decision (lost rent and reletting costs) when it could have avoided those costs altogether by accepting KFC's offer. We find that Danada's refusal of KFC's offer was a breach of its duty to mitigate that prevents Danada from recovering damages accruing after April 21, 2006.

Danada's focus on the steps that it took to relet the Premises and the damages it incurred after April 2006 is misplaced, because they occurred after Danada had already rejected a suitable tenant. The purpose of section 9—213.1 of the Act is to require a landlord to undertake reasonable efforts to relet the premises after a defaulting tenant departs, rather than allowing the premises to stand vacant and then attempting to collect the lost rent in the form of damages. *MXL Industries*, 252 Ill. App. 3d at 31. In seeking to hold KFC liable for damages accruing after April 2006, that is what Danada is trying to do.

Danada argues that, even if it did not satisfy the duty to mitigate, that failure should not completely bar its recovery for its losses after April 2006. However, the law is clear that, when a landlord has failed to mitigate, the damages that would otherwise be recoverable are reduced by the " 'amount of loss that [the landlord] could reasonably have avoided by *** making substitute arrangements.' " *St. George Chicago*, 296 Ill. App. 3d at 293, quoting Restatement (Second) of Contracts §350, Comment *b*, at 127 (1981). Here, Danada could reasonably have avoided all of the damages accruing after April 2006 by entering into a lease with KFC that did not include the 60-day out. Cutting off Danada's damages after this point is not a *per se* bar to recovery as Danada claims but rather a reduction in damages that is supported by Illinois law.

■ Finally, Danada argues that the trial court erred in denying its motion to reconsider the judgment and to reopen proofs. The arguments relating to reconsideration mirror those we have already considered and rejected, and so we need not repeat them. Instead, we turn to the trial court's denial of Danada's motion to reopen proofs. After the trial court entered its judgment on January 24, 2008, Danada sought permission to reopen the proofs to include a letter its attorneys wrote to KFC on May 16, 2006, after KFC ceased making monthly payments to Danada. The trial court denied the request, noting that Danada had ample opportunity to submit the letter prior to the hearing and the trial court's judgment and stating that in any event the letter would not affect its decision. In discussing this issue on appeal, although Danada describes the trial court's denial of its motion to reopen proofs, it does not identify any error in that ruling. Accordingly, we find this point forfeited. 210 Ill. 2d R. 341(h)(7); *Mikolajczyk v. Ford Motor Co.*, 374 Ill. App. 3d 646, 677 (2007).

For all of the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

ZENOFF, P.J., and McLAREN, J., concur.