# Illinois Official Reports

## Appellate Court

---

### *The Travelers Indemnity Co. v. Rogers Cartage Co.*, 2017 IL App (1st) 160780

---

| | |
|---|---|
| Appellate Court Caption | THE TRAVELERS INDEMNITY COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, Plaintiffs-Appellants, v. ROGERS CARTAGE COMPANY, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-0780 |
| Filed | December 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-55238; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed; motion denied. |
| Counsel on Appeal | Dentons US LLP, of Chicago (Donna J. Vobornik, Steven L. Merouse, and Geoffrey J. Repo, of counsel), for appellants.<br><br>Nassif Law Firm, of Creve Coeur, Missouri (Joseph G. Nassif, of counsel), and Lathrop & Gage LLP, of Clayton, Missouri (John M. Terry, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Harris and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1                                          BACKGROUND

¶ 2        Rogers Cartage Company (Rogers) is a trucking company that hauls bulk liquid chemicals from a shipper to an end-user. Two of Rogers's former truck cleaning facilities in Cahokia and Sauget, located in St. Clair County, were the subject of environmental contamination lawsuits. Rogers tendered defense of the underlying claims to The Travelers Indemnity Company and Travelers Property Casualty Company of America (collectively, Travelers), seeking coverage under numerous insurance policies issued by Travelers to Rogers. Travelers ultimately paid all of Rogers's defense costs under a reservation of rights, and Rogers eventually settled the two underlying suits for a total of $9 million. Rogers then sought indemnification from Travelers under numerous comprehensive general liability (CGL) and auto policies, including the missing CGL and auto policies that are the focus of these proceedings.

¶ 3        Travelers filed this declaratory judgment action in Cook County circuit court seeking a declaration of the parties' rights regarding the existence, terms, and conditions of various missing insurance policies allegedly issued by Travelers to Rogers in the 1960s and 1970s.[1] It is undisputed that neither party can locate originals or copies of the disputed policies and that there are no witnesses with contemporaneous knowledge of the existence, terms, or conditions of the disputed policies. There are two types of policies at issue: CGL policies and automobile policies.

¶ 4        It is undisputed that Travelers issued Rogers CGL policies for the policy periods of 1960-61 and 1965-66 (the bookend policies). Travelers continued to issue Rogers CGL policies through 1986. However, neither party could locate originals or copies of CGL policies issued by Travelers for the policy periods of 1961-62, 1962-63, 1963-64, or 1964-65. As the insured seeking coverage, Rogers had the burden of establishing by a preponderance of the evidence that the policies existed and the material terms and conditions of the policies. Rogers introduced secondary evidence consisting of various records produced by Travelers during discovery. Rogers also introduced secondary evidence to prove the terms and conditions of the CGL policies for the policy periods of 1961-62, 1962-63, 1963-64, and 1964-65.[2] Travelers contended that Rogers's evidence was insufficient to establish the existence of CGL policies for the policy periods of 1961-62, 1962-63, and 1963-64, or the terms and conditions of the CGL policies for the policy periods of 1961-62, 1962-63, 1963-64, and 1964-65.

¶ 5        It is also undisputed that, starting in the 1940s and continuing through the 1970s, Travelers issued Rogers numerous auto policies. Again, the parties were unable to locate

---

[1]Rogers filed its own declaratory judgment action in St. Clair County and moved to transfer or dismiss Travelers' declaratory judgment action based on *forum non conveniens*. The Cook County circuit court granted Rogers's motion to transfer in part but retained jurisdiction with respect to the issue of the alleged lost or missing policies.

[2]In the circuit court, Travelers contested the existence of the 1964-65 CGL policy. On appeal, it concedes the existence of the 1964-65 CGL policy because a known 1965-66 CGL policy indicated that it was a renewal policy. Travelers does not concede the terms and conditions of the 1964-65 CGL policy.

originals or copies of any auto policies issued by Travelers to Rogers between 1961 and 1970, but Travelers acknowledged the existence of the missing auto policies. Rogers introduced secondary evidence that it contends establishes the terms and conditions of the missing auto policies, but Travelers contends that Rogers's evidence is insufficient to establish the terms and conditions of the missing auto policies.

¶ 6    The parties filed cross-motions for summary judgment on all of the issues in dispute and agreed that there was no further discovery to do be done. Travelers' motion was supported by numerous exhibits, including business records; discovery responses; SL Letters (also identified as "Interoffice Memoranda");[3] an affidavit from Robert J. Harris, Travelers' second vice president in the special liability coverage unit; and various "Notice of Large Loss" records. Rogers's cross-motion was supported by letters written in 2000 by Hal C. Koplin, a claims adjuster at Travelers; Koplin's discovery deposition transcript; Travelers' commercial account claims records; commercial account register records; an excess 1962 "Certificate of Insurance"; the 1960-61 and 1965-66 CGL bookend policies; Travelers' "specimen" (or standardized) CGL policy forms used between 1961 and 1965; and certificates of auto insurance from the Illinois Department of Insurance.

¶ 7    The circuit court granted summary judgment in favor of Rogers and denied summary judgment to Travelers, finding that (1) Rogers proved the existence of the CGL policies for the policy periods of 1961-62, 1962-63, 1963-64, and 1964-65 by a preponderance of the evidence; (2) these CGL polices had the same material terms and conditions as those set forth in the 1960-61 and 1965-66 "bookend" policies; and (3) Rogers proved the terms and conditions of the auto policies issued between 1960 and 1971. Travelers appeals.

¶ 8                                                    ANALYSIS

¶ 9    On appeal, Travelers argues that Rogers did not prove (1) the existence of the CGL policies for the policy periods of 1961-62, 1962-63, or 1963-64; (2) the material terms and conditions of the alleged CGL policies for the policy periods of 1961-62, 1962-63, 1963-64, or 1964-65; or (3) the terms of the auto policies issued between 1961 and 1970. We address these arguments in turn.

¶ 10   The parties disagree about the standard of review. Travelers argues that our standard of review is *de novo*. It is well-settled that we review a circuit court's summary judgment ruling *de novo*. This is particularly true where the parties file cross-motions for summary judgment on the same issue since they typically agree that only a question of law is involved and invite the court to decide the case based on the record before it. *Pielet v. Pielet*, 2012 IL 112064, ¶¶ 28, 30. Summary judgment may be granted on cross-motions for summary judgment where it is clear that all material facts are before the court, the issues are defined, and the parties agree that only a question of law is involved. *Haberer v. Village of Sauget*, 158 Ill. App. 3d 313, 317 (1987) (citing *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958)). But it is also true that the mere filing of cross-motions for summary judgment does not obligate the circuit court to grant one of the motions (*Pielet*, 2012 IL 112064, ¶ 28), and if reasonable people could draw different inferences from the undisputed facts, summary judgment is inappropriate (*Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598,

_____

[3]Travelers explains that an "SL Letter" or "Series Letter" are Travelers' records that are normally provided to field offices to assist in processing claims made against insureds.

607 (2009) (citing *Mountbatten Surety Co. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 867 (2004))).

¶ 11 Rogers argues, however, that we should review the circuit court's decision under the manifest weight of the evidence standard because the circuit court's ruling "more closely resembles judgment after a bench trial" or a motion for judgment under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2010)). See, *e.g.*, *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise, Ltd.*, 384 Ill. App. 3d 849, 859 (2008) ("The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence.").

¶ 12 We find that our standard of review is *de novo*. The parties agreed that the record was complete and that testimonial credibility is not an issue in this case. The parties were in agreement that the circuit court was properly positioned to render a decision based on a wholly documentary record. Here, the circuit court was presented with a complete record, and the parties agreed that no further discovery was necessary. There was also no dispute that the circuit court would not need to evaluate the credibility of any witnesses since there were no disputes over the documents submitted for the court's consideration. The only remaining task was to draw reasonable inferences, if any, from the undisputed documentary record and to reach a conclusion. The circuit court's written order recognized that the presence of competing reasonable inferences ordinarily would preclude the entry of summary judgment. See *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004) ("A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts."). But the circuit court also recognized, given the posture of the evidence submitted, that denying summary judgment based on the presence of competing reasonable inferences would result in a bench trial where the parties would introduce the same evidence, raise no credibility issues, and then require the trier of fact to draw reasonable inferences from the undisputed evidence and reach a conclusion. The circuit court effectively converted the summary judgment proceedings into a stipulated bench trial. The procedure employed by the circuit court in this case was a proper exercise of judicial discretion and made in the interest of judicial economy. That does not, however, alter our standard of review. We review a circuit court's judgment *de novo* when the only evidence presented to a court is documentary and the circuit court does not engage in credibility determinations. *Danada Square*, 392 Ill. App. 3d at 608; see also *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001) ("If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court's judgment."). Based on the foregoing, we begin our *de novo* review.

¶ 13 Travelers first argues that Rogers failed to present sufficient evidence to establish by a preponderance of the evidence that Travelers issued CGL policies to Rogers for the policy periods of 1961-62, 1962-63, and 1963-64. A party seeking to prove the existence of an insurance policy must do so by a preponderance of the evidence. *Central Illinois Light Co. v. Home Insurance Co.*, 342 Ill. App. 3d 940, 961 (2003). In order to prove the existence of the disputed CGL policies, Rogers first relied on an August 30, 2000, letter from Koplin, a claims adjuster at Travelers. In notifying Rogers that Travelers would defend the underlying claims under a reservation of rights, Koplin stated that Travelers would pay Rogers's defense costs on a *pro rata* basis. Koplin wrote in a footnote:

"As you know, Travelers is participating in Rogers Cartage's defense under confirmed policies in effect from May 1, 1961[,] to May 1, 1962, [*sic*][4] and from April 1, 1967[,] to April 1, 1986. However, Travelers has also located secondary evidence that Travelers may have also issued policies which were in effect from May 1, 1961[,] to April 1, 1967."

¶ 14    Travelers contends that Koplin's letter is insufficient evidence of the policies' existence because at his discovery deposition he was asked what the "secondary evidence was for [his] determination on the possible inclusion or the inclusion in the calculation of the '61 to '67 policies." He responded, "Renewal policy numbers on the front page of insurance policies, commercial account registers, and commercial account claim records." Travelers asserts that the only renewal number Koplin ever identified was on the 1965-66 CGL policy, which only went to the existence of the 1964-65 CGL policy, the existence of which Travelers concedes on appeal.

¶ 15    Although Travelers' argument has some arguable merit, we must consider all of the evidence to determine whether it was more likely than not that Travelers issued CGL policies between 1961 and 1965. The 1962 "Certificate of Insurance" containing the header "Stewart, Smith & Co. Limited," titled "Excess Comprehensive and Auto B.I. and P.D. as Primary," reflected a "period: 12 months at 1st May, 1962," with Rogers listed as the "Assured." This document shows that an excess insurer agreed "to indemnify the Assured in respect of [its] operations as more fully defined in the Primary Policy issued by Travelers Insurance Co." This supports a reasonable inference that Travelers issued Rogers a CGL policy for the policy period of 1962-63. Furthermore, it is undisputed that Travelers issued CGL policies to Rogers before 1961 and after 1965, and there is no evidence in the record to suggest that Travelers did not issue CGL policies for the policy periods of 1961-62, 1962-63, and 1963-64, or that Rogers was covered under CGL policies from other insurers. Koplin's letter, when considered in conjunction with the 1962 "Certificate of Insurance," the undisputed existence of the bookend policies, the absence of any evidence showing that Travelers did not issue CGL policies to Rogers, and the absence of any evidence showing that Rogers was covered under CGL policies from other insurers, demonstrates that it is more likely than not that Travelers did issue CGL policies to Rogers for the policy periods of 1961-62, 1962-63, and 1963-64. We find, based on the evidence in the record, that Rogers proved by a preponderance of the evidence that Travelers issued CGL policies to Rogers for the policy periods of 1961-62, 1962-63, and 1963-64.

¶ 16    Next, Travelers argues that Rogers did not prove by a preponderance of the evidence the material terms and conditions of the CGL policies issued for the policy periods of 1961-62, 1962-63, 1963-64, and 1964-65. It argues that a party cannot demonstrate policy terms through the use of bookend policies and specimen policies alone. Travelers relies on *Canal Insurance Co. v. Montello, Inc.*, No. 10-CV-411-JHP-TLW, 2012 WL 4891699 (N.D. Okla. Oct. 15, 2012), *Remington Arms Co. v. Liberty Mutual Insurance Co.*, 810 F. Supp. 1420 (D. Del. 1992), and *Coltec Industries, Inc. v. Zurich Insurance Co.*, No. 99 C 1087, 2002 WL 31185789 (N.D. Ill. Sept. 30, 2002), to argue that there must be some "evidentiary link"

---

[4]Rogers acknowledges, and we agree, that these dates "appear to be a misprint as both the preceding and subsequent sentences refer to the missing policy period as May 1, 1961[,] to April 1, 1967."

between the bookend policies, specimen policies, and the missing policies before a party can use such evidence to prove the terms of a missing policy. Travelers insists that the bookend policies had different payment, coverage, and premium endorsements, and that the 1960-61 policy had no contractual liability endorsement and no contractual liability schedule while the 1965-66 policy did.[5] Additionally, Travelers argues that there was uncontested evidence that Travelers' specimen policies are merely "building blocks" that are used to construct coverage, and Rogers failed to show what coverages would have been selected.

¶ 17    We find that Rogers proved the material terms and conditions of the CGL policies for 1961 through 1965 by a preponderance of the evidence. Travelers has not offered any affirmative evidence to rebut, undercut, or discount Rogers's evidence that the disputed CGL policies contained the same coverage and endorsements as the bookend policies and specimen policies. Furthermore, although there were some differences between Travelers' specimen policies used between 1961 and 1965 and the bookend policies, Travelers has not identified any differences between Travelers' 1961 through 1965 specimen policies and the bookend policies that were material to the underlying claims here. We agree with the circuit court's conclusion that the terms in the 1960-61 and 1965-66 CGL policies contained no material differences and were substantially similar.

¶ 18    Rogers proved by a preponderance of the evidence that the 1964-65 policy contained the same terms and conditions as the 1965-66 CGL policy. It is undisputed the 1965-66 policy contained a number listed in the "renewal number" box. Koplin explained that the presence of a renewal number on the 1965-66 CGL policy suggested the existence of a 1964-65 CGL policy and that, in his experience with Travelers' policy forms, he did not know of anything other than a renewal number that might go in the "renewal number" box. Second, it is reasonable to infer that a renewal policy is renewed on the same terms and conditions as the previous policy unless otherwise stated. The fact that the 1965-66 CGL policy was a renewal of a previous policy allows for a reasonable inference that the terms of the 1964-65 CGL policy contained the same terms and conditions as the 1965-66 CGL policy. Travelers does not identify any evidence that might lead to an inference that the 1965-66 CGL renewal policy contains any material changes from the terms and conditions of the policy that it renewed.

¶ 19    Next, Rogers proved by a preponderance of the evidence that the terms and conditions of the bookend policies contained substantially similar terms not just to each other but also to the Travelers' CGL specimen policies in use during that time period. The evidence before the circuit court included the CGL policies for the policy periods of 1960-61 and 1965-66, as well as the specimen policy forms used by Travelers between 1961 and 1965. Rogers argued that the 1960-61 and 1965-66 bookend policies had the same per occurrence and aggregate limits of liability and that Travelers' 1961-65 specimen policies contained the same policy terms as the bookend policies. The circuit court observed there was no evidence that Travelers or Rogers sought to change the terms of the CGL policies at any time between 1961 and 1965. Although Travelers argues on appeal that the bookend policies do not match each other because the policies have different premium payment endorsements, coverage endorsements, and premium endorsements, Travelers makes no argument that the differences

---

[5]Travelers fails to cite the bookend policies to support this assertion but instead cites to the transcript of the summary judgment hearing where its counsel made this argument.

in payment, coverage, and premium endorsements in the bookend policies were material differences affecting coverage. Nor does Travelers argue that there were any material differences between the insuring agreements, exclusions, or conditions in the bookend policies, or that the specimen policies contain terms and conditions that are materially different from the terms and conditions in the bookend policies.

¶ 20    Travelers argues that a party cannot demonstrate policy terms through "the use of mere 'bookend' policies or specimen forms—more evidence is required." Travelers relies on *Canal*, *Remington Arms*, and *Coltec*.

¶ 21    *Canal* involved a declaratory judgment action related to insurance coverage for asbestos-related injury claims against Montello, Inc. (Montello). During the course of the litigation, a dispute arose between Montello and Continental Casualty Company (Continental) regarding the existence, terms, and conditions of two excess umbrella liability insurance policies allegedly issued by Continental to Montello for the periods of 1968-71 and 1971-74. *Canal*, 2012 WL 4891699, at *2, 4. Montello could not locate originals or copies of the policies, but sought to establish the existence, terms, and conditions of the policies through secondary evidence. *Id.* at *2. One issue before the district court was Continental's motion to strike two expert reports authored by Robert Hughes, a purported expert in the reconstruction of missing insurance policies. *Id.* at *2-3. Hughes engaged in an extensive forensic examination to conclude that the policies existed and that terms and conditions of the policies could be determined by looking to "exemplar form policies" used during the time period. *Id.* at *5-10. The district court ultimately struck Hughes's reports as unreliable under Federal Rule of Evidence 702, finding, among other things, that (1) he relied on two Continental exemplar policies that were never used in Oklahoma, where the policies were purported to have been underwritten, (2) he changed his conclusion regarding which exemplar form was most likely to have been used based on new information that he received, (3) he could not ultimately say with any certainty which exemplar form was most likely used, and (4) the exemplar forms had materially different terms and conditions. *Id.* at *7-10.

¶ 22    *Canal* is distinguishable from the case here. The *Canal* court found Hughes's methodology was too speculative because there was an insufficient link between the missing policies and the exemplar forms. That is not the case here, where there are confirmed 1960-61 and 1965-66 bookend policies that contain substantially the same material terms and conditions and Travelers' specimen policies in use between 1961 and 1965 also contain substantially the same material terms and conditions contained in the 1960-61 and 1965-66 bookend policies. In other words, much of what the district court in *Canal* found lacking in Hughes's reports is in fact present here. Furthermore, *Canal* involved an expert's complex forensic effort to reach conclusions regarding the contents of unknown policies without having examined exemplar policies that were actually used by the insurer in Oklahoma at the time the policies were purportedly issued. Here, the parties do not dispute the existence, terms, and conditions of the 1960-61 and 1965-66 bookend policies or that the proffered Travelers' specimen policies were in use in Illinois between 1961 and 1965. *Canal* is therefore distinguishable.

¶ 23    In *Remington Arms*, the plaintiff insured sought a declaration that the defendant insurer issued umbrella excess policies for 1965-69 and 1972-73. *Remington Arms*, 810 F. Supp. at 1421. It was undisputed that the defendant issued some form of liability insurance to the plaintiff from at least 1936 to 1980. *Id.* The insured submitted over 2000 pages of evidence,

including business records, sample policies and bookend policies that were both marked as renewals, internal memoranda directly referencing the policies, retrospective premium reports, uncontroverted deposition testimony, and proof of premium payments. *Id.* at 1427. The district court denied the insured's motion for summary judgment, finding that "although all the evidence presented in this case is uncontroverted, genuine issues of fact exist as to *** both the inferences to be drawn from the evidence presented and the sufficiency of the evidence itself." *Id.* at 1428. Here, the parties acquiesced to the circuit court making the very inferences that the *Remington Arms* court found were within the province of the finder of fact. *Remington Arms* provides little guidance for resolving the dispute before us.

¶ 24    In *Coltec*, the insured sought a declaration regarding the terms and conditions of six CGL policies from 1959-65 that could not be located. *Coltec*, 2002 WL 31185789, at *1. The insured offered secondary evidence to establish the terms and conditions of the missing policies. Specifically, the insured relied on specimen CGL policy forms containing the terms and conditions of the policies in use during 1959-65, certificates of insurance for the insurer's policies, a contemporaneous memorandum authored by an employee of the insured summarizing and describing the coverage under the missing policies, and testimony that the policies were written on the insurer's form policies. *Id.* at *7. After considering the evidence, the district court found that the insured demonstrated by a preponderance of the evidence that the missing policies were written on the insured's standard CGL policy forms, that the certificates of insurance demonstrated that the insurer issued policies with definite terms, and that the remaining evidence further corroborated the terms and conditions of the missing policies. *Id.* at *7-15.

¶ 25    Here, Travelers merely argues that "Rogers did not come anywhere close to producing similar evidence to support its claims." But *Coltec* does not stand for the proposition that any particular quantity of evidence is necessary to establish the terms and conditions of a missing insurance policy. Instead, *Coltec* evaluated the quality of the evidence to conclude that the insured established the terms and conditions of the missing policies. Here, Rogers came forward with evidence that the same material terms and conditions are contained in each bookend policy, as well as evidence that the same material terms and conditions contained in Travelers' specimen policies were contained in each bookend policy. Travelers came forward with no evidence that might call into doubt whether the missing policies were actually issued or that might support a reasonable inference that the material terms and conditions of the missing policies were different. Instead, Travelers relies on the absence of evidence to suggest that summary judgment should be entered in its favor. However, the existence of the bookend policies and the specimen policies, all of which contain substantially the same material terms and conditions, coupled with the absence of any affirmative evidence suggesting the presence of different terms or conditions, supports a reasonable inference that the missing CGL policies contained the same material terms and conditions as the bookend and specimen policies.

¶ 26    We conclude that Rogers established by a preponderance of the evidence that the 1961-62, 1962-63, 1963-64, and 1964-65 CGL policies had the same material terms and conditions as the bookend policies issued in 1960-61 and 1965-66. The circuit court's judgment in favor of Rogers is affirmed.

¶ 27    Finally, Travelers argues that the circuit court erred in granting summary judgment in favor of Rogers regarding the terms and conditions of the auto policies issued between 1961

and 1970. Travelers does not dispute that the certificates of insurance and "Notice of Large Loss" forms establish the existence of the auto policies. Instead, it contends that Rogers did not prove by a preponderance of the evidence the terms and conditions of those auto policies and the circuit court erroneously found that Travelers' SL Letters and the bookend auto policies issued to Rogers prior to 1961 and after 1970 sufficiently provided those terms and conditions. Furthermore, Travelers argues that it issued Rogers over 100 auto policies insuring Rogers against a variety of different automobile risks and that there is no single, uniform auto policy that Rogers can point to as the source of the terms for the missing policies. Travelers further notes that the circuit court found that the auto policies issued between 1961 and 1970 contain the same material terms as a confirmed policy for 1960-61 but that the 1960-61 policy was never made a part of the record.

¶ 28    A party seeking to prove the terms of an insurance policy must do so by a preponderance of the evidence. *Central Illinois Light*, 342 Ill. App. 3d at 961. A party moving for summary judgment bears the initial burden of proof. *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 40 (citing *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007)). Once the moving party satisfies that initial burden, the burden shifts to the nonmoving party to come forward with some factual basis that would entitle it to a favorable judgment. *Nedzvekas*, 374 Ill. App. 3d at 624.

¶ 29    Here, Rogers's motion for summary judgment argued that Travelers' SL Letters showed:

> " '[A] complete outline of the renewal Compensation and Automobile coverages' containing the essential terms of the polices, including the name and address of the insured, the name of insurance broker [*sic*] who obtained coverage, type of car insured (and excluded), limits of liability, policy number, the policy period, location of the risk, how the premium was calculated, and which endorsements were added to the form policy."

At the hearing on the cross-motions for summary judgment, Rogers argued that Travelers' SL Letters indicated that Travelers issued Rogers renewal auto policies annually between 1958 and 1970 and that the parties were in possession of the 1960-61 auto policy. Rogers contended that the 1960-61 auto policy was a renewal policy and that the SL Letters supported a finding that there were continuous renewals of auto policies through 1970. Rogers further argued that there was no evidence of any changes, cancellations, or rewritings of the auto policies. The circuit court agreed, finding that the SL Letters indicated that "each [auto] policy issued from 1958 to 1970 was a renewal policy, and contain no suggestion of any relevant policy change through the missing policy years."

¶ 30    We find that Rogers established by a preponderance of the evidence the terms and conditions of the auto policy for each annual policy period between 1961 and 1970. Travelers' own documentation indicates that it annually renewed Rogers's auto policy from 1958 to 1970. On November 21, 2012, Travelers' counsel sent a letter to Rogers's counsel denying settlement authority under a number of different confirmed auto policies. In the November 21, 2012, letter, Travelers acknowledged an auto policy "that could possibly be implicated" with the policy No. RKSLA-9430000 for a policy period of May 1, 1960 to May 1, 1961. An SL Letter dated April 25, 1960, reflects that policy No. RKSLA-9430000 was a renewal of policy No. RKSLA-8390542 (1959-60), which was a renewal of policy No. RKSLA-4510729 (1958-59), which was a renewal of policy No. RKSLA-3135376 (1957-58). The SL Letters show that policy No. RKSLA-3135376 was an auto policy

covering "Inspection" for "Owned, Hired, and Non-Owned (Owned private passenger cars not covered)" with limits of "25/100 B.I.; $25,000 P.D.," with endorsements for "4050 Receipts Basis," "1721—B.I—Coverage is on 'Occurrence Basis,' " and "1721—Coverage is excluded as respects owned private passenger cars." Those identical coverage terms and endorsements were reflected in the SL Letters for 1958-61 and are also reflected in the SL Letters describing policy periods for 1961-70. We conclude that Rogers has established by a preponderance of the evidence the terms and conditions of auto policies issued by Travelers to Rogers for policy periods covering 1961-70.

¶ 31    Finally, Travelers notes that the 1960-61 auto policy is not part of the record that was before the circuit court or this court, and thus neither the circuit court nor this court can rely on that policy to establish the terms and conditions of the missing policies. The circuit court, however, observed that the 1960-61 auto policy was in the parties' possession. Travelers does not dispute that it is in possession of the 1960-61 policy. Furthermore, as described above, the material terms and conditions of the 1960-61 auto policy can be discerned from Travelers' SL letters: the 1960-61 auto policy had the same terms and conditions as the 1957-58 auto policy RKSLA-3135376 and it is clear from the SL Letters that Travelers issued Rogers a renewal auto policy every year between 1961-70 with the same terms and conditions as the 1957-58 auto policy. Therefore, the fact that the 1960-61 policy is not in the record is of no material moment: whatever terms and conditions are in the 1960-61 auto policy that is in Travelers' possession are the terms and conditions for the auto policies for 1961-70.

¶ 32    In sum, we find that Rogers established the terms and conditions of the auto policies issued by Travelers between 1961 and 1970 by a preponderance of the evidence. The circuit court's judgment in favor of Rogers is affirmed.

¶ 33    As a final matter, after this court held oral argument, Rogers filed a motion to strike a comment made by Travelers' counsel during rebuttal that the circuit court never considered the 1960-61 auto policy because that policy was not made a part of the record. Rogers acknowledges that a similar assertion was made in Travelers' reply brief but claims that Travelers has only raised this issue when Rogers has no opportunity to respond. Rogers, of course, could have addressed this issue at oral argument but did not. However, as we have explained, the absence of the 1960-61 policy from the record is not material because the terms of that policy can be ascertained from the record, Travelers has acknowledged the existence of the policy, and the policy is in Travelers' possession. We therefore deny Rogers's motion to strike portions of Travelers' oral argument.

¶ 34                                CONCLUSION

¶ 35    Rogers proved by a preponderance of the evidence the existence of CGL policies issued by Travelers to Rogers for the policy periods of 1961-62, 1962-63, and 1963-64. Rogers further presented sufficient evidence to prove that the material terms and conditions set forth in the 1961 and 1965 CGL bookend policies more probably than not were the material terms and conditions contained in the missing CGL policies issued for the policy periods of 1961-62, 1962-63, and 1963-64. Finally, Rogers proved by a preponderance of the evidence that there are auto policies for the period of 1961-70 with the same material terms and conditions as a known auto policy for the policy period of 1960-61. We therefore affirm the

- 10 -

judgment of the circuit court.

¶ 36        Affirmed; motion denied.